Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Francene Rosenkrans*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Francene Rosenkrans,<br><br>         Plaintiff,<br><br>    v.<br><br>AIG Life Insurance Company; Camden Property Trust; Camden Property Trust Disability Plan ,<br><br>         Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Francene Rosenkrans (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

4      2.       Plaintiff is a resident of Maricopa County, Arizona.

5      3.       Upon information and belief, Camden Property Trust (hereinafter referred to
6  as the "Company") sponsored, administered and purchased a group long-term disability
7  insurance policy which was fully insured by AIG Life Insurance Company (hereinafter
8  referred to as "AIG").  The specific AIG long term disability group insurance policy is
9  known as Group Policy No.: GLTD-50978 (hereinafter referred to as the "Policy").  The
10 Company's purpose in sponsoring, administering and purchasing the Policy was to provide
11 long-term disability insurance for its employees.  Upon information and belief, the AIG
12 Policy may have been included in and part of an employee benefit plan, specifically
13 named the Camden Property Trust Disability Plan (hereinafter referred to as the "Plan")
14 which may have been created to provide the Company's employees with welfare benefits.
15 At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as
16 defined by 29 U.S.C. §1002(1).

17     4.       Upon information and belief, AIG functioned as the claim administrator of
18 the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the
19 Plan may not have made a proper delegation or properly vested fiduciary authority or power
20 for claim administration in AIG.

21     5.       AIG operated under a conflict of interest in evaluating her long-term
22 disability claim due to the fact that it operated in dual roles as the decision maker with
23 regard to whether Plaintiff was disabled as well as the payor of benefits.  AIG's conflict

existed in that if it found Plaintiff was disabled, it was then liable for the payment of her disability benefits.

6. The Company, AIG and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other potential non-disability employee benefits she may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about August 21, 1999, due to serious medical conditions and was unable to work in her designated occupation as a Leasing Consultant. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff filed a claim for short term disability benefits which was approved by AIG, and those benefits have been paid and exhausted.

11. Following the exhaustion of her short-term disability benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by AIG. AIG made every decision in Plaintiff's long-term disability claim.

12. Upon information and belief, the relevant AIG Policy and definition of disability governing Plaintiff's long term disability claim is as follows:

"Disability" or "Disabled" means:

1. You cannot perform each of the material duties of your regular occupation; and
2. After benefits have been paid for 24 months, you cannot perform each of the material duties of any gainful occupation for which you are reasonably fitted taking into consideration training, education or experience; or
3. You, while unable to perform all of the material duties of your regular occupation on a full-time basis, are:
    a. Performing at least one of the material duties of your regular occupation or another occupation on a part-time or full-time basis; and
    b. Earning currently at least 20% less per month than your indexed pre-disability earnings due to that same injury or sickness.

13. In support of her claim for long-term disability benefits, Plaintiff submitted to AIG, medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

14. AIG approved Plaintiff's long-term disability claim and paid her long-term disability benefits through July 10, 2014, for a total of approximately fourteen (14) years.

15. During the period of time Plaintiff was receiving long-term disability benefits, she also applied for, was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

16. Plaintiff informed AIG that her claim for Social Security disability benefits had been approved and she submitted to AIG documentation from the SSA which confirmed the approval.

17. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy.

18. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the AIG Policy for the first 24 months of disability and substantially similar to the Policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim and the fact that SSA has continued to pay her benefits for so many years is relevant evidence for this Court to consider with regard to the unreasonableness of AIG's decision to terminate and deny Plaintiff's claim and benefits.

19. In a letter dated July 17, 2014 AIG informed Plaintiff it was terminating her long term disability benefits beyond July 10, 2014, without any medical documentation or evidence that Plaintiff's medical conditions had improved or that she was capable of returning to work.

20. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed AIG's July 10, 2014 termination of her benefits.

21. In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to AIG additional medical evidence demonstrating that she met any definition of disability set forth in the Policy.

22. In a letter dated September 17, 2014, AIG informed Plaintiff it was again denying her claim for long-term disability benefits, which Plaintiff timely appealed.

23. In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to AIG additional medical evidence demonstrating that she met any definition of disability set forth in the Policy.

24. As part of its review of Plaintiff's claims for disability benefits, AIG obtained a medical records only "paper review" of Plaintiff's claim from Randall King, M.D., who is consulting physician for the University Disability Consortium (hereinafter "UDC"). As the

1  attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), UDC has a
2  long business relationship with the disability insurance industry by providing the type of
3  medical records reviews as occurred in this case and Plaintiff alleges UDC may derive a
4  significant amount of its annual revenue from its relationship with the industry.  As a result,
5  Plaintiff alleges that in the review of her claim, Dr. King was not independent, objective or
6  impartial with regard to the opinions he rendered regarding whether or not Plaintiff was
7  disabled.

8        25.    Upon information and belief, Plaintiff believes Dr. King may be long time
9  medical consultant for the disability insurance industry, UDC and/or AIG.  As a result,
10 Plaintiff believes Dr. King may have an incentive to protect his own consulting relationship
11 with the disability insurance industry, UDC and/or AIG by providing medical records only
12 paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's
13 claim, in order to provide opinions and report(s) which are favorable to insurance
14 companies and/or AIG and which supported the denial of Plaintiff's long-term disability
15 claim.

16       26.    In a letter dated February 26, 2015, AIG notified Plaintiff it had denied her
17 claim for long-term disability benefits under the Policy.  In the letter, AIG also notified
18 Plaintiff she had exhausted her administrative levels of review and could file a civil action
19 lawsuit in federal court pursuant to ERISA.

20       27.    Upon information and belief, AIG's February 26, 2015 denial letter confirms
21 it failed to provide a full and fair review, and in the process committed several procedural
22 violations pursuant to ERISA due to among other reasons, completely failing to credit,
23 reference, consider, and/or selectively reviewing and/or de-emphasizing most, if not all of
24 Plaintiff's reliable evidence.

25
26

28. In evaluating Plaintiff's claim on appeal, AIG had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

29. AIG failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. AIG's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law, and a reason she did not receive a full and fair review.

30. Plaintiff alleges AIG provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim; by providing a one sided review of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; by failing to adequately consider the fact that SSA continued to find Plaintiff was entitled to SSA disability benefits; by failing to credit Plaintiff's reliable evidence; by disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; by

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

failing to engage Plaintiff in a dialogue so she could perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

31. Plaintiff alleges a reason AIG provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles AIG undertook as the decision maker and the payor of benefits. AIG's conflict of interest provided it with a financial incentive to deny Plaintiff's claim, thereby saving itself money.

32. Plaintiff is entitled to discovery regarding AIG's aforementioned conflicts of interest. UDC's and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced AIG's decision to deny her claim.

33. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the standard of review for the Court to apply is *de novo*, because even though the Policy unlawfully contains discretionary language, it was issued in the State of Texas where Camden Property Trust is headquartered and Texas banned discretionary clauses in disability policies in 2011. In denying her claim, Plaintiff alleges AIG failed to provide a full and fair review pursuant to ERISA, and AIG's decision to terminate her benefits is *de novo* wrong. If the Court concludes the Policy confers discretion and that the standard of review is for an abuse of discretion, Plaintiff alleges AIG's unlawful ERISA violations as referenced herein are an abuse of discretion, that they precluded a Full and Fair review as required by ERISA and are so flagrant that they justify *de novo* review.

34. As a direct result of AIG's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential non-disability employee benefits she may have been entitled to receive or was receiving through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled. Plaintiff believes other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy which provided coverage for her and her family/dependents.

35. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

36. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that Plaintiff meets the definition of disability set forth in the Plan and/or Policy and requiring Defendants to pay her the long-term disability benefits she is due as well as any other non-disability employee benefits she may be entitled to as a result of being found disabled, from the date she was first denied all of these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for the termination of benefits;

1       C.    For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

      D.    For such other and further relief as the Court deems just and proper.

DATED this 18th day of December, 2015.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff